**THE ALTMAN LAW GROUP**
BRYAN C. ALTMAN (State Bar No. 122976)
JOEL E. ELKINS (State Bar No. 256020)
6300 Wilshire Blvd. Suite 980
Los Angeles, California 90048
Telephone: (323) 653-5581
Fax: (323) 653-5542

Attorneys for Plaintiff ORIT ARFA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORIT ARFA, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>ZIONIST ORGANIZATION OF AMERICA, a New York corporation; MORTON KLEIN, an individual; and DOES 1 through 20, inclusive,<br><br>        Defendants. | CASE NO. CV13-2942 ABC (SSx)<br><br>[Hon. Audrey B. Collins, Courtroom 680]<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF RE MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION**<br><br>Magistrate:    Hon. Suzanne Segal<br>Courtroom:    23<br>Date:          December 17, 2013<br>Time:          10:00 a.m.<br><br>Complaint Filed:   March 25, 2013<br>Discovery Cutoff: April 16, 2014<br>Pretrial Conf:    August 11, 2014<br>Trial Date:       September 9, 2014 |

-1-

**PLF'S SUPPL BRIEF RE MOTION TO COMPEL REQUESTS FOR PRODUCTION**

Plaintiff Orit Arfa hereby submits her supplemental briefing on her Motion to Compel Supplemental Responses to Requests for Production:

**Requests No. 15 and 16**

Plaintiff contends that she was fired because she objected to an illegal policy of the ZOA not to "broach [the tax issue] with donors unless it is absolutely necessary or they ask about it specifically." TAC, ¶¶14, 38-50. Defendants dispute Plaintiff's claim in part because they claim that the policy was not in fact illegal and that no donor was objectively lied to. Indeed, Klein has claimed that he specifically informed Sheldon Adelson, one of the ZOA's major donors, of the tax exemption issue and that Mr. Adelson made a large donation despite this issue.

Plaintiff seeks communications between the ZOA and these prospective donors, including Mr. Adelson, in order to prove that the ZOA's policy was fraudulent and illegal. Defendant has refused to produce, asserting a number of groundless objections, none of which overcome Plaintiff's right to this discovery.

<u>Relevance</u>: Elements of common law fraud include (1) misrepresentations of (2) material fact (3) relied upon (4) to the recipient's detriment. CACI 1900.

ZOA's representations to prospective donors (either disclosing the revocation, overtly misrepresenting the organization's tax status, or carefully skirting the issue) are therefore relevant to the issue of whether ZOA's policy was to mislead donors.

Donors' communications **to** ZOA are also relevant to the materiality of the ZOA's tax exempt status to donors. For example, if (as Plaintiff contends) a would-be donor stated that s/he could not currently donate given the state of the ZOA's tax status, or, conversely, acknowledged that s/he was aware of the revocation but was comfortable with the idea of a contributions "holding organization," those would both be relevant to the issue of materiality.

<u>Vague</u>: Plaintiff in fact <u>did</u> agree to redefine "any potential ZOA donor" in Request No. 16 in order to make it less vague. But even had she not, because the Request is limited to representations regarding the tax issue, even representations to

the "population at large" (such as press releases, advertisements, interviews with the media, etc.) would be relevant to the issue of ZOA's disclosure/concealment policy.

Burdensome: Defendant's burdensome objection is dependent on its relevance objection, merely stating that the Requests are burdensome because they are irrelevant. As stated above, whether or not ZOA's policy violated any federal or state statute or regulation is at the crux of the wrongful termination claim. The actual representations made to prospective donors is critical to that analysis.

Furthermore, to the extent Defendant contends that Request No. 15 is overbroad because it may include representations unrelated to the tax exemption issue, Defendant has not produced, nor offered to produce, *any* documents responsive to this Request, as required. *See* Fed. R. Civ. Proc. 34(b)(2)(C); *Aikens v. Deluxe Fin'l Servs., Inc.*, 217 F.R.D. 533, 539 (D. Kan. 2003) ("the responding party still has a duty to respond *to the extent the request is not objectionable*") (emphasis original).

Confidentiality and Privacy: Plaintiff has agreed to enter into a protective order ensuring the confidentiality of any documents produced. Furthermore, Plaintiff has agreed that Defendant may redact the amounts each individual donor has donated.

Defendant has therefore articulated no valid reason for withholding these documents which Plaintiff seeks in order to counter Defendant's contention that she has no claim because its policy was in fact legal and not fraudulent.

**Requests No. 29**

Defendant justifies its relevance objection by claiming that "Plaintiff has failed to meet her legally-mandated burden of establishing she was similarly situated to Mr. Kadosh **in all respects**." Joint Stipulation at 18 (emphasis added), citing to *Beck v. United Food & Comm. Workers Union Local 99*, 506 F.3d 874, 885 (9th Cir. 2007); *Wall v. National R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983). Defendant seeks to impose burdens on Plaintiff that simply do not exist.

PLF'S SUPPL BRIEF RE MOTION TO COMPEL REQUESTS FOR PRODUCTION

No case, including those cited by Defendant, holds that employees must be similarly situated "**in all respects**," simply because no two people are ever similarly situated in <u>all</u> respects. *Beck* and other cases look at whether the individuals are "similarly situated 'in all <u>material</u> respects.'" *See Beck*, 506 F.3d at 885 (emphasis added). *Wall* does not even mention "in all respects."

The material similarities between Arfa and Kadosh are that they both held leadership positions in the Western Region and their only "crimes" were violating company policy, in Arfa's case, seeking outside opinions as to the ZOA's concealment policy, and in Kadosh's, committing perjury thereby endangering its defense in a wrongful termination lawsuit. Plaintiff will argue at trial that Kadosh's transgression was far worse (and not legally protected) while Arfa's job performance was much better. To the extent Defendants plan to offer alternative explanations as to why Kadosh was not fired, Plaintiff is entitled to conduct discovery on this issue.

**Request No. 31**

The Board meeting at which the tax issue was discussed and the allegedly illegal policy was implemented are relevant to Plaintiff's claims, and Defendant has articulated no specific third party privacy issues which would preclude production. Therefore, Defendant's objection boils down to its claim of attorney-client and work product privileges, both of which are not sufficiently substantiated.

Defendant claims that the September 11, 2012 meeting of ZOA's board is privileged because its counsel attended "for the purposes of providing legal advice and obtaining information so as to provide future legal advice to the ZOA." Joint Stipulation at 23. <u>Defendant's position is not supported by applicable authority</u>. In fact, attendance by counsel at a business meeting even where legal advice is provided does not render the content of the entire meeting privileged. *See Callaway Golf Co. v. Screen Actors Guild*, 2009 WL 81387, *3 (S.D. Cal. 2009) ("The mere fact that clients were at a meeting with counsel in which legal advice was requested or received does not mean that everything said at the meeting is privileged."), citing

-3-

*Neuder v. Battelle Pacific Northwest*, 194 F.R.D. 289 (D.D.C. 2000).

As to Defendant's overbroad reading of work product, the issue is discussed below.

**Request No. 35**

Defendant's claim that parties in federal court are not entitled to information regarding insurance coverage because it is not relevant to the claims or defenses of the parties is simply wrong. In fact, insurance coverage is one of the expressly enumerated category of documents that parties must exchange under Fed. R. Civ. Proc. 26(a)(1)(A)(iv). One court even held that discovery into the amount of available coverage is so central to prosecution of a lawsuit and necessary "to prevent undue prejudice" that it trumped the discovery hold implemented by the PSLRA. *In re Comdisco Sec. Litig.*, 166 F.Supp.2d 1260, 1263 (N.D. Ill. 2001).

**Attorney-Client Privilege**

Because Defendants have agreed not to rely on advice of counsel as a defense, the communications with Tyler Korn and Cliff Rieders are not in dispute, nor are the documents for which Defendants have withdrawn the privilege assertion.[1]

As for Ms. Tuchman, Defendants' contention that she provided legal advice to the ZOA is **unsupported by any evidentiary support**. "A party asserting the attorney-client privilege has the burden of establishing the relationship." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Defendants have in no way met that burden. In fact, the ZOA's website (an excerpt of which is attached hereto as Exhibit A) states that she is the director of ZOA's Center for Law and Justice which educates, lobbies Congress and advocates for pro-Israel causes. She is not a litigation or tax attorney providing such services to the ZOA and has never been retained in that capacity. Her access to supposedly confidential information was solely in her role as ZOA officer and, as such, is discoverable.

---

[1] Discussion on the December 11 board meeting is contained above and will not be repeated here.

-4-

PLF'S SUPPL BRIEF RE MOTION TO COMPEL REQUESTS FOR PRODUCTION

### **Work Product**

Defendant's overly expansive view of "work product" cannot be supported even by its own case law. For example, Defendant quotes the applicable standard -- that documents are only protected if they "would not have been created in substantially similar form but for the prospect of that litigation" (Joint Stipulation at 34, quoting *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004)) -- while simultaneously attempting to avoid its implications. *See also United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir. 1998) (denying privilege to "documents that are prepared in the ordinary course of business").

The vast majority of the documents at issue were created during the ordinary course of business **well before Ms. Arfa had even contemplated this lawsuit** and well before she was terminated from employment by the ZOA. Furthermore, at the time there was no real possibility of any lawsuit by a defrauded donor. *See Equal Rights Ctr. v. Post Properties*, 247 F.R.D. 208, 210 (D.D.C. 2008) ("at the time she prepared the document, the attorney must at least have had a subjective belief that litigation was a **real possibility** and that belief must have been **objectively reasonable**") (emphasis added). Discussions about the potential legality of a policy cannot be considered "in anticipation of litigation." By this logic, a hypothetical email from one company employee to another suggesting that they stop dumping chemicals into the ocean because it might be illegal would be considered "work product." Defendant cannot point to any authority that supports such an expansive definition of "in anticipation of litigation."

Furthermore, work product is not an absolute privilege, but a "qualified immunity." That is to say documents which do not reflect an attorney's mental impressions (which Defendant essentially concedes is the case here) are discoverable upon a showing of substantial need and inability to obtain the equivalent without undue hardship. Fed. R. Civ. Pro. 26(b)(3)(A). Plaintiff has made this showing in its Joint Stipulation.

**THE ALTMAN LAW GROUP**

Dated: December 3, 2013   By:   /s/ Bryan C. Altman
                                 Bryan C. Altman, Esq.
                                 Joel E. Elkins, Esq.

   Attorneys for Plaintiff ORIT ARFA