**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ORIT ARFA,

Plaintiff,

v.

ZIONIST ORGANIZATION OF AMERICA, et al.,

Defendants.

Case No. CV 13-2942 ABC (SS)

**MEMORANDUM DECISION AND ORDER FOLLOWING IN CAMERA REVIEW OF DOCUMENTS WITHHELD UNDER ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT PROTECTION (Dkt. No. 55)**

**I.**

**INTRODUCTION**

On November 26, 2013, Plaintiff filed a Motion to Compel further responses to certain requests for production. (Dkt. No. 55). The parties filed a Joint Stipulation concurrently with the Motion. (Id.). On December 3, 2013 each side filed a supplemental memorandum. (Dkt. Nos. 58 & 61). The Court held a hearing on December 17, 2013.

\\

\\

On December 23, 2013, the Court granted Plaintiff's Motion in part and ordered Defendants to lodge all documents listed on their privilege log over which they asserted attorney client privilege or work product protection but no other privilege for in camera review. (Dkt. No. 65 at 35). On January 13, 2014, Defendants lodged four hundred and sixty (460) pages of documents which they contended were protected from disclosure pursuant to the work product doctrine (as well as copies of Plaintiff's production requests and Defendants' responses and privilege log), along with the declarations of Jennifer B. Hodur ("Hodur Decl."), Cynthia L. Filla ("Filla Decl."), David Drimer ("Drimer Decls. I & II"),[1] Morton Klein ("Klein Decl."), Susan Tuchman ("Tuchman Decl."), and Tyler Korn ("Korn Decl."). (See Notice of Lodging, Dkt. No. 70). Also on January 13, 2014, Plaintiff filed the declaration of Steven M. Goldberg ("Goldberg Decl. I"). (Dkt. No. 69). On January 21, 2014, Plaintiff filed a second declaration of Steven M. Goldberg ("Goldberg Decl. II").[2] (Dkt. No 74). On January 27, 2014, Defendants lodged two notices of errata, one pertaining to the Hodur declaration ("Err. Hodur Decl.") and the other pertaining to one of the Drimer declarations ("Err. Drimer Decl."). (See Notice of Lodging, Dkt. No. 77). On the same date, Defendants filed a third declaration

---

[1] Defendants lodged two Drimer declarations on January 13, 2014. The Court will refer to the longer Drimer declaration as "Drimer Decl. I" and the shorter declaration as "Drimer Decl. II."

[2] The first twelve paragraphs of Goldberg's January 13 and January 21, 2014 declarations are nearly verbatim copies of one another. The January 21, 2014 corrects certain minor formatting errors in the January 13, 2014 declaration, expands the discussion in paragraph 12, and adds paragraphs 13 and 14.

by David Drimer ("Drimer Decl. III") with the Notice of Lodging. (See id.). The Court then took the matter under submission.

As further discussed below, the Court finds that emails or portions of emails that mention, discuss or respond to legal recommendations and advice in the Seton Memorandum circulated by Goldberg on August 14, 2012, or that mention, discuss or respond to legal recommendations and advice by attorneys Susan Tuchman and Tyler Korn, are protected from disclosure under the either attorney client privilege or the work product doctrine. However, the Court also finds that emails or portions of emails that reflect personal disputes or disagreements about the management of ZOA and other business matters, including Plaintiff's employment, are not protected work product and must be produced. In addition, simply copying or sending materials to an attorney does not automatically convey protected status over those materials. Accordingly, Plaintiff's Motion to Compel Further Responses to Requests for Production is GRANTED IN PART AND DENIED IN PART with respect to the documents that Defendants withheld on either attorney client privilege or work product grounds. As further explained below and as reflected in the attached Addendum to Order, Defendants are ORDERED to produce all documents that the Addendum indicates shall be produced or produced with redactions, within seven (7) calendar days of the date of this Order. All other documents may be withheld as set forth in the Addendum.

\\

\\

**II.**

**THE PARTIES' CONTENTIONS**

Plaintiff generally challenges Defendants' assertion of work production protection as to documents prepared by non-attorneys, including (1) communications among senior ZOA officers and/or board members about ZOA's alleged policy to conceal the loss of its tax exempt status, and (2) communications among the same individuals about how to respond to Plaintiff's lawsuit. (Jt. Stip. at 30-32). Plaintiff argues that work product is protected from disclosure only if it is prepared by an attorney and is limited to the attorney's "impressions, conclusions, opinions, or legal research and theories." (Id. at 31). Plaintiff further argues that the withheld documents were not created "but for the prospect of litigation" because "[w]hether or not litigation was anticipated, Defendant[s] would have still needed to formulate a policy of how to deal with the loss of its tax exemption and how to deal with a principled employee who is raising questions about its legality and ethics." (Id.). Finally, Plaintiff contends that she has a substantial need for the documents and the information is not easily obtainable from other sources. (Id. at 31-32).

Defendants objected to all requests to the extent they seek information protected by attorney client privilege and/or work product doctrine. (Dkt. 55 at 8). Defendants argue that work product protection is not limited to materials prepared by an attorney, but may be applied to "materials prepared by a party,

or any representative of the party, including (but not limited to) an attorney, in anticipation of litigation." (Id. at 34) (quoting Fed. R. Civ. P. 26(b)(3) (emphasis in original)). Defendants also note that under the Ninth Circuit's "totality of the circumstances" test, work product protection applies to "dual purpose" documents that are created both for a business purpose and in anticipation of litigation where "their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." (Id. at 35) (quoting In re Grand Jury Subpoena (Torf), 357 F.3d 900, 910 (9th Cir. 2004)). Finally, Defendants contend that the materials withheld as work product were prepared "because of" the prospect of litigation, including possible litigation by board members, donors, and/or employees. (Id.).

**III.**

**STANDARDS**

**A. Work Product Doctrine**

Pursuant to the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or in preparation for trial may be immune from discovery.[3] Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329

[3] As the Court has previously explained, unlike the attorney-client privilege, the application of the work product doctrine in diversity cases is determined under federal law. Frontier Refining, Inc. v. Gorman-Rupp, Inc., 136 F.3d 695, 702 n.10 (10th Cir. 1998); see also U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC, 268 F.R.D. 614, 617 n.2 (N.D. Cal.

U.S. 495, 509–12 (1947); United States v. Richey, 632 F.3d 559, 567 (9th Cir. 2011). One of the primary purposes of the work product doctrine is to prevent one party from exploiting the other party's efforts to prepare for litigation by "borrowing the wits of their adversaries." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992); see also Admiral Ins. co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989) ("[T]he work-product rule protects a client's investment in his attorney's labor to prevent unfair exploitation . . . ."); LightGuard Systems, Inc. v. Spot Devices, Inc., 281 F.R.D. 593, 598 (D. Nev. 2012) ("[T]he work product doctrine protects attorneys' thought processes and legal recommendations."); Braun v. Agri-Systems, 2006 WL 278592 at *5 (E.D. Cal. Feb. 2, 2006) ("The 'work product' doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews."). The party claiming work product protection has the burden of proving the applicability of the doctrine. A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 192 (C.D. Cal. 2006).

The work product doctrine protects documents created by an attorney and may protect documents created by an agent or client

---

2010) (because the work product doctrine is not an evidentiary privilege "but rather, [a] procedural limitation[] on discovery, the scope of [the] asserted protection[] is determined by federal law, even when the federal court sits in diversity."); California Earthquake Authority v. Metropolitan West Securities, 285 F.R.D. 585, 589 (E.D. Cal. 2012) ("Since the attorney work product doctrine involves a procedural consideration and not application of a substantive privilege, federal law applies.").

of an attorney as well. In re Grand Jury Subpoena (Torf), 357 F.3d at 907 (documents created by investigator at direction of counsel are protected work product); see also McEwen v. Digitran Systems, Inc., 155 F.R.D. 678, 683 (D. Utah. 1994) ("The work product doctrine protects 'material prepared by agents for the attorneys as well as those prepared by the attorney for himself.'"); (quoting United States v. Nobles, 422 U.S. 225, 238-39 (1975)); Gucci Am., Inc. v. Guess, Inc., 271 F.R.D. 58, 74 (S.D.N.Y. 2010) (the work product doctrine has been "extended . . . to work product produced by a client at the direction of counsel in anticipation of litigation").

In In re Grand Jury Subpoena (Torf), the court observed that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation. In re Grand Jury Subpoena (Torf), 357 F.3d at 907. Recognizing the "realities" of modern litigation, and quoting the Supreme Court in United States v. Nobles, 422 U.S. 225, 239 (1975), the Ninth Circuit observed that the doctrine protects material prepared by agents for the attorney as well as material prepared by the attorney directly. Id.

Furthermore, "[c]ourts have held that materials created by a committee investigating corporate wrongdoing in response to shareholder demands are entitled to work-product protection." In re Vioxx Products Liability Litig., 2007 WL 854251 at *4 (E.D. La. Mar. 6, 2007) (citing cases); but see Pettingill v. Caldwell,

2006 WL 2439842 at *1 (D. Del. Aug. 21, 2006) (ordering production of minutes of Board of Directors meetings, including comments by board member who was also a lawyer, where lawyer's "suggestion" to the board was "of such a general nature" that the court could not "conclude that her advice was legal, as opposed to general business advice").

"The phrase 'in anticipation of litigation' has both temporal and motivational components." Equal Rights Center v. Post Properties, Inc., 247 F.R.D. 208, 210 (D. D.C. 2008) (quoting Fed. R. Civ. P. 26(b)(3)). A court must look to the totality of the circumstances surrounding the creation of the document when determining whether the document is entitled to work product protection. See In re Grand Jury Subpoena (Torf), 357 F.3d at 908. At the time the attorney or the attorney's agent prepared the document, he or she "'must at least have had a subjective belief that litigation was a real possibility and that belief must have been objectively reasonable.'" Id. (quoting In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)). In addition, "the party claiming the privilege must demonstrate that 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Id. (quoting Senate of P.R. v. Dep't of Justice, 823 F.2d 574, 587 n.42 (D.C. Cir. 1987)). In circumstances "where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation," the document may be considered "work product" if, after the court considers the

"totality of the circumstances," it can be fairly said that the document "was created because of anticipated litigation" and "would not have been created in substantially similar form but for the prospect of litigation." Richey, 632 F.3d at 568 (internal quotation marks omitted).

The Ninth Circuit also observed in In re Grand Jury Subpoena (Torf):

> The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered. In the "because of" Wright & Miller formulation, "the nature of the document and the factual situation of the particular case" are key to a determination of whether work product protection applies. (citation omitted). When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.

In re Grand Jury Subpoena (Torf), 357 F. 3d at 908 (emphasis in original).

"Documents prepared in the ordinary course of business or that would have been created in essentially similar form

irrespective of the litigation are not protectable as work product." Umpqua Bank v. First American Title Ins. Co., 2011 WL 997212 at *4 (E.D. Cal. Mar. 17, 2011); see also Southern Union Co. v. Southwest Gas Corp., 205 F.R.D. 542, 549 (D. Ariz. 2002) (documents prepared to be presented to Board of Directors instead of court or administrative tribunal "resemble business documents rather than documents prepared in anticipation of litigation"); Tayler v. Travelers Ins. Co., 183 F.R.D. 67, 70 (N.D. N.Y. 1998) ("[T]here is no work product immunity for documents prepared in the ordinary course of business prior to the commencement of litigation."). The work product rule does not apply merely because there is a remote prospect of future litigation. Fox v. California Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988). Rather, when litigation is pending or imminent, i.e., there is an identifiable prospect of litigation or specific claims have already arisen, the rule comes into play. Id.

Courts routinely distinguish between "ordinary" and "opinion" work product. "Ordinary" work product includes "raw factual information." St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 628 (N.D. Iowa 2000). "Opinion" work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Even if a document qualifies for work product protection, ordinary work product may still be discovered if the party seeking the discovery demonstrates a "substantial need" for the materials and there is no other means for obtaining that information without

undue hardship. Fed. R. Civ. P. 26(b)(3); Hickman, 329 U.S. at 511. In contrast, opinion work product may be discovered only "when mental impressions are at issue in a case and the need for the material is compelling." Holmgren, 976 F.2d at 577.

**B. Attorney-Client Privilege**

When parties to a federal diversity action assert evidentiary privileges during discovery litigation, state law privileges apply to the extent that state law provides the rule of decision. See Fed. R. Evid. 501; see also Star Editorial, Inc. v. Dist. Court, 7 F.3d 856, 859 (9th Cir. 1993); In re Cal. Pub. Utils. Comm'n v. Westinghouse Elec. Corp., 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."). Accordingly, unlike the work product doctrine, California law, not federal law, concerning the attorney-client privilege applies. See Kandel v. Brother Intern. Corp., 683 F. Supp. 2d 1076, 1081 (C.D. Cal. 2010) ("In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege claims.").

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. See Cal. Evid. Code § 952. The privilege authorizes a client "to refuse to disclose, and to prevent others

from disclosing, confidential communications between attorney and client . . . ." Id. § 954. "Confidential communication" is defined in relevant part as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . to further the interest of the client . . . or the accomplishment of the purpose for which the lawyer is consulted . . . ." Id. § 952. The privilege also protects communications involving agents of the attorney, the client, or both in furtherance of the attorney-client relationship. See California Earthquake Authority v. Metropolitan West Securities, LLC, 285 F.R.D. 585, 595 (E.D. Cal. 2012) (applying California law); see also Zurich American Ins. Co. v. Superior Court, 155 Cal. App. 4th 1485, 1501 (2007) (attorney-client communications disclosed among employees or "business associates" within a company "'when made to further the interest of the client or when reasonably necessary for transmission or accomplishment of the purpose of the consultation, remain privileged'") (quoting Insurance Co. of North America v. Superior Court, 108 Cal. App. 3d 758, 771 (1980)).

The party claiming a privilege "shoulders the burden of showing the evidence it seeks to suppress falls within the terms of an applicable statute." HLC Properties Ltd. v. Superior Court, 35 Cal. 4th 54, 59 (2005). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the

privilege does not for other reasons apply." Costco Wholesale Corp. v. Superior Court, 47 Cal. 4th 725, 733 (2009). Because evidentiary privileges "prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed." People v. Sinohui, 28 Cal. 4th 205, 212 (2002) (internal quotation marks omitted).

The attorney-client privilege protects only the "disclosure of communications between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." State Farm Fire & Casualty Co. v. Superior Court, 54 Cal. App. 4th 625, 639 (1997) (emphasis in original). Furthermore, "documents prepared independently by a party, including witness statements, do not become privileged communications or work product merely because they are turned over to counsel." Wellpoint Health Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110, 119 (1997); see also Costco Wholesale Corp., 47 Cal. 4th at 735 (the privilege "does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney").[4]

[4] The same principle applies under federal common law. "The fact that one of the many recipients of the emails was a lawyer for [defendant] does not protect the emails under the attorney-client privilege doctrine." FTC v. Lights of America, Inc., 2011 WL 1515158 at *6 (C.D. Cal. Mar. 31, 2011); see also United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact that a person is a lawyer does not make all communications with that person privileged."); Bell Microproducts, Inc. v. Relational Funding Corp., 2002 WL 31133195 at * 1 (N.D. Ill. Sept. 25, 2002) (attorney's instruction to employees to copy him as a recipient on any emails or documents to assure attorney-client privilege

Under California Evidence Code section 912, a party waives the attorney-client privilege if it "has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid. Code § 912(a). Waiver occurs where disclosure is made to "strangers to the attorney-client consultation" or to persons who "possess interests adverse to the client." Ins. Co. of N. Am. v. Superior Court, 108 Cal. App. 3d 758, 766 (1980). However, as noted above, California courts have held that communications between non-attorneys within a corporation for the purpose of obtaining or relaying legal advice are protected by the attorney-client privilege. Zurich American Ins. Co., 155 Cal. App. 4th at 1501; see also Wilstein v. San Tropai Condominium Master Ass'n, 189 F.R.D. 371, 379-80 (N.D. Ill. 1999) ("[C]onversations among the board members discussing their attorney's legal advice about potential litigation risk and legal strategy are privileged under the attorney-client privilege.").

**DISCUSSION**

Consistent with the purpose of the attorney-client privilege, the Court finds that communications from ZOA executives (serving as agents for an attorney), referring to or repeating counsel's advice or recommendations, and Board members are protected from disclosure because these communications

---

was incorrect as "the mere presence of a lawyer's name at the top or bottom of a document is not the bell that causes the dog named Privilege to salivate") (emphasis in original).

reflect confidential attorney-client communications. However, the mere "cc-ing" of counsel on an email or the forwarding of an email to counsel does not extend the attorney-client privilege to an otherwise non-privileged document.

The work product doctrine applies to documents created by a party or attorney in anticipation of litigation. Thus, documents created by counsel for ZOA or created by a party (which includes the ZOA Board because ZOA is a party here) that were created because of anticipated litigation are protected by the work product doctrine. The Court examines the totality of the circumstances in making this determination – i.e., were the documents or emails prepared at the direction of ZOA counsel? At the time the documents or emails were created, was litigation reasonably anticipated? If the answers to these questions are no, then the documents are not work product.

Emails or portions of emails that predominantly reflect personal disputes or disagreements among ZOA executives and Board members about the management of ZOA or other business matters, including Plaintiff's employment, are not work product and must be produced. In light of the voluminous number of documents submitted for the Court's in camera review, the Court will not address each document individually here. Instead, the Court will categorize the documents by author.[5] However, the attached

[5] "Author" includes emails within an email chain, whether the party initiated the email chain or is responding to another party's emails.

Addendum to Order specifies, by exhibit, whether each exhibit submitted for in camera review must be produced in its entirety or produced as redacted, or whether the exhibit is properly withheld under the work product doctrine or attorney-client privilege.

**A. Steven Goldberg**

Goldberg is an attorney in private practice. He also holds a volunteer position as the National Vice Chairman of Defendant Zionist Organization of America ("ZOA") and has served as a member of ZOA's Board of Directors since 2010. (Goldberg Decl. II ¶¶ 2-3 & 11). Many of the documents withheld on work product grounds are emails by Goldberg urging the Board and ZOA's executives to take action following the loss of ZOA's tax exempt status. Many of the emails also express Goldberg's personal disagreements with ZOA's management, particularly Mort Klein, and his frustration with particular executives and Board members. Defendants have withheld Goldberg's emails, asserting that they are either work product or protected by attorney-client privilege. The Court finds that neither doctrine protects the majority of Goldberg's emails.

While Goldberg apparently briefly represented ZOA in an earlier lawsuit, the evidence is clear that at the time the withheld documents were created, he was not serving as counsel to ZOA. Nor did any attorney representing ZOA direct or request that Goldberg prepare emails or documents. Rather, Goldberg

prepared such emails as a Board member, expressing his disagreement with ZOA President Morton Klein and the Board's decisions.

Goldberg's emails to Klein and Board members reflect his concern over ZOA's loss of tax exempt status and his thoughts on how ZOA should proceed, including on matters relating to the instant action. While Goldberg likely anticipated that litigation might result from the loss of tax exempt status, Goldberg's emails were not created for the "purpose" of litigation as they were not written for any anticipated litigation. Rather, Goldberg, acting in his fiduciary, not legal, capacity was motivated by the dispute between himself, Klein and others over how they were to handle the loss of ZOA's tax exempt status as well as other matters related to the management of ZOA, including issues arising from Plaintiff's employment. Goldberg repeatedly noted that he was not an expert in the areas of law implicated by ZOA's loss of tax exempt status and emphasized that he was not purporting to give legal advice. (See Hodur Decl. at 176 & 217). Instead, Goldberg merely attempted to raise various issues relating to the loss of tax exempt status -- of an ethical, business and legal nature -- for the Board's consideration, as might any other member of the Board, whether or not trained in the law. Accordingly, the majority of Goldberg's emails are not protected by either the work product doctrine or the attorney-client privilege. .[6]

[6] Even though Goldberg does not believe the work product doctrine or attorney client privilege apply to his emails, if they do, he

However, while Goldberg's communications regarding the need for ZOA to address the loss of its tax exempt status and his personal disputes with ZOA executives and Board members are not protected from disclosure, his communications specifically referring to legal advice he received and disseminated to the Board in the Seton Memorandum are protected by the attorney-client privilege and work product doctrine.[7]   The Court acknowledges that the record is not entirely clear as to whether the Seton Memorandum, which contains legal advice solicited by Goldberg and shared with the Board, created an attorney-client relationship with Goldberg alone or with the Board as a whole. As the Second Circuit has generally explained:

> [W]hen conflicts arise among factions within a corporation and its counsel is unable to represent all factions . . . an individual member of management or of the board of directors has the right to seek the advice of an attorney who does not represent the

---

states that he waives these privileges. (Goldberg Decl. II ¶ 12).   However, as the Board is the holder of these privileges, an individual member of the Board does not have the right to waive the privileges on the Board's behalf. See Galli v. Pittsburg Unified School Dist., 2010 WL 4315768 at *4 (N.D. Cal. Oct. 26, 2010) ("The power to waive the privilege rests with the Board, and the actions of an individual Board member alone cannot waive the privilege."). Thus, Goldberg's "waiver" is irrelevant.

[7] Kent E. Seton is an attorney who apparently specializes in non-profit organizations.  Goldberg hired Seton to draft a memorandum addressing the potential liability of ZOA and individual board members as a result of ZOA's loss of tax exempt status (the "Seton Memorandum").  Goldberg distributed copies of the Seton Memorandum to Drimer and ZOA's Board on August 14, 2012. (Err. Hodur Decl., Exh. A).

> corporation as an entity but who can instead represent the plaintiff in an individual capacity, or the faction of which the plaintiff is a member. In doing so, such individual member of management or of the board does not necessarily create an attorney-client relationship between the consulted attorney and the corporate entity itself.

Evans v. Artek Systems Corp., 715 F.2d 788, 792 (2d Cir. 1983). However, in the unique circumstances in this case, even though Goldberg personally hired Seton using his own funds and identified himself as the client, the record also shows that Goldberg always intended to share the Memorandum with the Board for the purpose of obtaining legal advice for the Board. Furthermore, before receiving the Seton Memorandum, Goldberg indicated that depending on what the Memorandum's conclusions were, the Memorandum may provide some protection for the Board, not just himself. Therefore, the Court finds the dissemination of the Seton Memorandum to the Board created an attorney-client relationship between Seton and the Board, not just Goldberg, and that the Board's discussions of the specific legal advice and recommendations in the Seton Memorandum are protected either as work product or as a confidential attorney-client communication.

The Court notes that, even if Goldberg's emails that discussed only his personal disagreements and frustrations were protected as work product, Plaintiff's substantial need for the emails would overcome the protection. Goldberg's emails are

contemporaneous evidence of the dispute between Goldberg and Klein, which eventually involved Plaintiff and, according to Plaintiff, led to her termination. Such detailed information, not subject to the vagaries of memory and concerning the core events as they were unfolding, is not available from other sources. Depositions will not be the substantial equivalent of Goldberg's emails. See Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., 2012 WL 1389708 at *6 (E.D. Mo. Apr. 23, 2012) (finding that depositions could not serve as substantial equivalent to emails created close in time to disputed events). Accordingly, the Court finds that Goldberg's emails must be produced, except to the extent that they mention, discuss or respond to the legal advice and recommendations in the Seton Memorandum or other legal advice, or to the extent that they constitute or reflect confidential communications with counsel.

**B. Susan Tuchman and Tyler Korn**

Susan Tuchman is an attorney employed by ZOA as the Director of ZOA's Center for Law and Justice. Tuchman states that she regularly provides legal advice to ZOA. Tyler Korn is an outside tax attorney who provided tax advice to the Board, particularly concerning the loss of tax exempt status. The Court finds that legal advice and recommendations that Tuchman and/or Korn provided to ZOA or the Board are protected from disclosure pursuant to the attorney-client privilege. See Cal. Evid. Code § 952. In addition, communications among ZOA executives or Board members that specifically mention, discuss or respond to legal

advice from Tuchman and/or Korn are protected from disclosure by the either the attorney-client privilege or work product doctrine.[8] However, emails or portions of emails involving Tuchman that do not involve the solicitation or provision of legal advice, or on which Tuchman is merely copied along with other Board members, are not privileged and must be produced. See Wellpoint Health Networks, Inc., 59 Cal. App. 4th at 119.

**C. David Drimer and Morton Klein**

David Drimer is ZOA's National Executive Director. Morton Klein is ZOA's president. The emails involving Drimer and Klein do not appear to have been created in anticipation of litigation but rather to address management disputes and ZOA's policies. Accordingly, emails or portions of emails to or from Drimer and Klein must be produced. If any portion of such emails discuss the Seaton Memorandum or Korn's advice, then that portion of the email may be redacted.

**D. Board Members**

Communications among Board members appear generally to fall into two categories: communications that directly address legal advice and recommendations in the Seton Memorandum or provided by

[8] Similarly, to the extent that Goldberg's emails discuss confidential or privileged information that Goldberg obtained from his representation of ZOA in the Sager matter (another employment action brought against ZOA), or from any other matter in which Goldberg represented ZOA as counsel, such information is protected from disclosure and should not be produced.

Tuchman or Korn, and communications that concern personal disputes, ZOA management, and other business matters, including the loss of ZOA's tax exempt status and Plaintiff's employment. Consistent with the foregoing, the Court finds that emails or portions of emails to or from Board members that specifically mention, discuss or respond to legal advice, whether that advice came from Seton, Tuchman or Korn, are protected work product. However, emails or portions of emails that reflect personal disputes or frustrations, discussions about the Board's fiduciary responsibilities and other topics related to ZOA's management are not protected work product and must be produced.

**IV.**

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Further Responses to Requests for Production is GRANTED IN PART AND DENIED IN PART with respect to the documents that Defendants withheld on attorney-client privilege or work product grounds. Defendants shall produce the emails on the attached Addendum to Order listed in the "Produce" column, in which case the email must be produced without redaction, and the "Produce as Redacted" column, in which case the email may be produced with the redactions noted in the "Comments" column. Production must be completed within seven calendar days of the date of this Order. Defendants may withhold the documents that are identified as "Do Not Produce."

If a deposition is dependent upon or requires the use of these documents prior to the date of production ordered here, the Court strongly recommends that Defendants prioritize those documents and produce them in time for their use at the deposition. If the documents are not produced for use at the deposition, it is possible that the Court may exercise its discretion at a later date to conclude that the delay in production is grounds for a further deposition of that witness to question the witness about such documents.

IT IS SO ORDERED.

DATED: March 3, 2014

/S/

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**Orit Arfa v. Zionist Organization of America, et al.**
**CV 13-2942 ABC (SS)**

**Addendum to Order re <u>In Camera</u> Review**

| Exhibit | Produce | Produce As Redacted | Do Not Produce | Comments |
|---|---|---|---|---|
| 5[9] | X | | | Goldberg email to Klein; not prepared at direction of attorney in anticipation of litigation; no a-c priv. |
| 6 | X | | | Contact info. Not protected |
| 7 | X | | | Not prepared at direction of attorney in anticipation of litigation |
| 8 | x | | | Same as above |
| 9 | X | | | Same as above |
| 10 | X | | | Same as above |
| 11 | X | | | Same as above |
| 12 | X | | | Same as above |
| 13 | X | | | Same as above |
| 14 | X | | | Same as above |
| 15 | X | | | Same as above |
| 16 | X | | | Same as above |
| 17 | | X | | Redact remarks regarding Julie Sager lawsuit; otherwise produce |
| 18 | | X | | Same as above |
| 19 | | X | | Same as above |
| 20 | | X | | Same as above |
| 21 | | X | | Same as above |
| 22 | | X | | Same as above |
| 23 | X | | | No a-c or w-p |
| 24 | | X | | Contains attorney-client privileged communication – Korn's advice – redact portion reflecting Korn's advice July 13, 2012 email |
| 25 | | X | | Same as above |
| 26 | | X | | Same as above |

[9] Exhibits 1-4 are copies of discovery requests and responses, and Defendants' privilege log.

| **Exhibit** | **Produce** | **Produce As Redacted** | **Do Not Produce** | **Comments** |
|---|---|---|---|---|
| 27 | | X | | page 263: redact second sentence of second paragraph of Goldberg 7-17-12 email revealing Korn's advice |
| 28 | | X | | page 265: same redaction as Exh. 27 |
| 29 | | X | | page 269: same redaction as Exh. 27 |
| 30 | | X | | Page 272: Redact Korn's advice in July 13, 2012 email |
| 31 | | X | | page 275: same redaction as Exh. 27 |
| 32 | X | | | No a-c or w-p |
| 33 | | X | | Portion of email prepared in anticipation of litigation and containing a-c communication - page 281: redact starting after the words "The agenda was" and continue to redact last three paragraphs of Drimer 7-18-12 email |
| 34 | X | | | No a-c or w-p |
| 35 | X | | | Same as above |
| 36 | | X | | Page 289: Klein's email includes reference to legal advice that belongs to Board; redact Klein's email |
| 37 | | X | | Goldberg July 30, 2013 email to Klein, copied to others – not prepared at direction of attorney in anticipation of litigation; instead, prepared by board member expressing frustration; redact all references to Sager litigation |
| 38 | | X | | pages 294-96: redact all references to legal advice |

| Exhibit | Produce | Produce As Redacted | Do Not Produce | Comments |
|---|---|---|---|---|
| 39 | | X | | page 299: same redaction as Exh. 38 |
| 40 | | X | | Page 304-5; redact references to Sager litigation |
| 41 | | X | | Same as above |
| 42 | X | | | Not protected – comments reflect primarily personal disagreement between Goldberg and Klein |
| 43[10] | | | X | Email includes both work product (Seton Memorandum is document prepared in anticipation of litigation) and references to a-c privileged communications |
| 44 | X | | | Email primarily about future of ZOA organization |
| 45 | | | X | Memorandum regarding Seton Memo protected both by work product and by discussion of a-c privileged communication |
| 46 | | | X | Same as above |
| 47 | X | | | Not work product; merely copied to attorneys |
| 48 | X | | | Same as above |
| 49 | | | X | Board Member (Goldberg) discussing a-c privileged communication with staff, board members, counsel; Drimer's discussion of response to Seton Memo |
| 50 | | | X | Same as above |
| 51 | | | X | Same as above |
| 52 | X | | | No work product or a/c privilege |

[10] As amended by Err. Hodur Decl., Exh. A.

| Exhibit | Produce | Produce As Redacted | Do Not Produce | Comments |
|---|---|---|---|---|
| 53 | X | | | Email from Goldberg to Board – mentions hiring counsel and obtaining opinion, but no facts or specific recommendations revealed |
| 54 | X | | | Goldberg email primarily about future of ZOA |
| 55 | X | | | Same as above |
| 56 | | | X | Email from Drimer/Goldblatt to Board discusses and attaches a-c privileged communications |
| 57 | | | X | Email from Goldberg to Board re a-c privileged communications |
| 58 | | X | | Redact portions of email at pages 369-70 discussing a-c privileged communications |
| 59 | | X | | Same as above |
| 60 | | X | | Same as above |
| 61 | X | | | Email from Goldberg to Board, primarily about future of ZOA |
| 62 | | | X | Email and attachments from Drimer to Board, primarily about a-c communication/Seton memo and Korn comments |
| 63 | X | | | No a/c or work product |
| 64 | X | | | No a/c or work product |
| 65 | X | | | Same as above |
| 66 | X | | | Same as above |
| 67 | | | X | Emails that contain a-c privileged information and work product |
| 68 | | | X | Same as above |

| **Exhibit** | **Produce** | **Produce As Redacted** | **Do Not Produce** | **Comments** |
|---|---|---|---|---|
| 69 | | X | | pages 414-15: redact Drimer 8-29-12 email and attachment dated 8-7-12 |
| 70 | | X | | pages 417-19: redact Drimer 8-29-12 email and attachment dated 8-7-12 |
| 71 | | | X | Korn a-c emails |
| 72 | | X | | Emails from Goldberg to Katz, primarily personal or governance issues; page 431: redact Drimer 8-29-12 email |
| 73 | | X | | page 436: same redaction as Exh. 72 |
| 74 | | X | | page 440: same redaction as Exh. 72 |
| 75 | X | | | No w/p or a-c |
| 76 | X | | | No w/p or a-c |
| 77 | X | | | Goldberg's request for Korn's memo – the request itself is not privileged; no work product in emails |
| 78 | X | | | No w/p or a-c |
| 79 | X | | | Goldberg's email to Drimer asking for name and contact info. Of retained counsel – fact of retaining counsel and identity of counsel is not privileged |
| 80 | | X | | page 449: redact second half of second sentence in Drimer 10/11/12 email |
| 81 | | | X | A/c privileged communications involving Drimer and Korn |
| 82 | X | | | No a-c communication, no work product |
| 83 | X | | | No a-c communication, no work product |

| Exhibit | Produce | Produce As Redacted | Do Not Produce | Comments |
|---|---|---|---|---|
| 84 | X | | | Cease and desist letter from Drimer to Goldberg – no a-c confidential communication and no work product protection |
| 85 | X | | | Same as above |
| 86 | X | | | Response to cease and desist letter – no a-c communication and no work product protection |
| 87 | X | | | Email from Drimer to Klein advising Klein to not say anything, etc. – Email reflects Drimer's personal views, not views of counsel; no a-c privileged information included and document not entitled to work product protection |
| 88 | | | X | a-c communication |
| 89 | | X | | Memo from Drimer To Goldblatt on assorted topics - Redact references to Arfa litigation |
| 90 | X | | | Goldberg's response to cease and desist letter |
| 91 | X | | | Goldberg email – mostly regarding ZOA future |
| 92 | | X | | Plaintiff's counsel's letter and emails forwarding – may redact emails reflecting a-c communications |
| 93 | X | | | No a-c or w-p |
| 94 | X | | | No a-c or w-p |

| **Exhibit** | **Produce** | **Produce As Redacted** | **Do Not Produce** | **Comments** |
|---|---|---|---|---|
| 95 | | X | | Drimer emails to Board attaching a-c privileged communications – Redact attachment (Tuchman Memo) and confidential comments; forwarding emails are not protected |
| 96 | | X | | A-C and W-P - redact portions reflecting counsel's recommendations |
| 97 | | X | | Forwarding emails not privileged; redact counsel's recommendations at page 513 |
| 98 | X | | | No a-c or w-p |
| 99 | | | X | Attorney client communications |
| 100 | | | X | Draft of policy re communications prepared by counsel and Drimer subject to work product and a/c privilege |
| 101 | X | | | No a-c or w-p |
| 102 | X | | | Same as above |
| 103 | X | | | Same as above |
| 104 | X | | | Same as above |
| 105 | | | X | Contains a-c privileged communications that Goldberg had access to as result of his role in Sager case |
| 106 | X | | | Contains comments from attorney Ken Bialkin, but in role as friend not legal advisor |
| 107 | | | X | Contains a-c privileged communications |
| 108 | | | X | Same as above and work product |
| 109 | | | X | Contains a-c privileged communications |

| Exhibit | Produce | Produce As Redacted | Do Not Produce | Comments |
|---|---|---|---|---|
| 110 | | | X | Contains a-c privileged communications |
| 111 | X | | | No a-c or w-p |
| 112 | X | | | Same as above |
| 113 | X | | | Same as above |
| 114 | X | | | Same as above |
| 115 | X | | | Same as above |
| 116 | X | | | Same as above |
| 117 | X | | | Same as above |
| 118 | X | | | Same as above |
| 119 | X | | | Same as above |
| 120 | X | | | Same as above |
| 121 | | | X | Contains a-c communications |
| 122 | | X | | Produce but redact references to conversations with Korn |
| 123 | | | X | Contains a-c communications |
| 124 | X | | | No a-c or w-p |
| 125 | X | | | Emails containing discussion on ZOA issues, etc., but mostly personal beliefs, disagreements |
| 126 | X | | | Same as above |
| 127 | X | | | Same as above |
| 128 | X | | | No a-c communications or work product |